UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J.R.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DREW BOSTOCK, Immigration and Customs Enforcement Field Office Director for Seattle Enforcement and Removal Operations, TODD M. LYONS, United States Immigration Customs and Enforcement Acting Director, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, KRISTI NOEM, Secretary of the United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and PAMELA BONDI, United States Attorney General,<br><br>　　　　　Defendants. | CASE NO. 2:25-cv-01161-JNW<br><br>TEMPORARY RESTRAINING ORDER |

TEMPORARY RESTRAINING ORDER - 1

# 1. INTRODUCTION

The Court considers an emergency request for relief from Plaintiff J.R.[1] who faces imminent deportation to a country that is neither his country of origin nor the country where the immigration judge ordered J.R. to be sent. The Government has filed a notice stating that it is exploring "a potential resolution," but failing that, it intends to oppose J.R.'s motion. Dkt. No. 18 at 1. What the Government does not say, however, is that it will not take further action on J.R.'s removal during the in-between time.

The Court finds that J.R. raises serious questions about the Government's failure to follow its non-discretionary statutory and due process obligations when removing individuals to third counties not included in removal orders. These serious questions, combined with the clear irreparable harm of deportation, justify temporary intervention.

Although orders issued before the non-moving party has responded are generally disfavored, considering the imminent threat of removal, the Court grants this limited restraining order without waiting for the Government's opposition. This temporary relief preserves the status quo until both parties can fully present their arguments at a preliminary injunction hearing. This approach balances the

---

[1] J.R. moved for leave to proceed under a pseudonym when he filed his complaint on June 20, 2025. Dkt. No. 2. The motion will be ripe for consideration on July 11, 2025, when the Government has had an opportunity to respond. Until then, the Court uses his requested pseudonym—J.R.—and will post an amended order should it deny the proposed relief.

TEMPORARY RESTRAINING ORDER - 2

extraordinary nature of ex parte relief against the concrete risk of irreversible harm.

## 2.  BACKGROUND

J.R. is a native and citizen of the Philippines. Dkt. No. 3-1 ¶ 1. On March 11, 2025, an immigration judge issued a final order, directing J.R.'s removal to the Philippines. Dkt. No. 3-2 at 2. J.R. waived his right to appeal. *Id.*

J.R. was detained at the Northwest ICE Processing Center, until April 2025, when ICE transferred him to the South Texas ICE Processing Center. Dkt. No. 3-1 ¶¶ 3–4. On May 5, 2025, ICE officers told J.R. he would be removed to Libya. *Id.* ¶ 5. In the middle of the night, on May 7, 2025, ICE officers and a team of corrections center employees forced J.R. and twelve other individuals out of bed and placed them in shackles. *Id.* ¶¶ 7–8, 17. They were then escorted onto a bus and driven to an airport. *Id.* ¶¶ 18, 23. An ICE officer confirmed that the group was headed to Libya. *Id.* ¶ 16. But the group never exited the bus, and several hours later, they returned to South Texas ICE Processing Facility. *Id.* ¶¶ 24–25. Since returning, ICE has not scheduled J.R. for a removal flight to the Philippines or responded to his or his counsel inquiries even though J.R. has a travel document for the Philippines and the Philippines has stated it will accept his repatriation. Dkt. No. 3-1 ¶ 30.

On June 26, 2025, consular officials from the Consulate of the Philippines met with J.R. and asked ICE officials to confirm their intent to remove him to the Philippines. Dkt. No. 15-2 ¶ 6. The ICE officials stated J.R.'s removal was in "early

planning" stages. *Id.* But later that night, ICE transferred J.R. and three other individuals to an ICE processing center at an airport in Louisiana. *Id.* ¶¶ 11–12. One individual told J.R. that ICE officers had informed him that they were being deported to Cuba. *Id.* ¶ 11. Their flight was cancelled, and ICE returned J.R. to the South Texas ICE Processing Center. *Id.* ¶ 15.

J.R. contacted his counsel, who then tried to confirm that he would not be deported to a country other than the Philippines. Dkt. No. 15-3. His counsel received a response from Acting Assistant Field Officer Director Jaime Burns stating she was working on travel arrangements to bring J.R. back to the Northwest ICE Processing Center, however, she did not confirm to which country he would ultimately be removed. Dkt. No. 15-3 at 2. J.R. fears imminent deportation to a third country, especially Libya or Cuba.

### 3. DISCUSSION

**3.1  Legal standard.**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an

injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

**3.2   The Court has subject-matter jurisdiction.**

"Federal courts are always under an independent obligation to examine their own jurisdiction, and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (citation modified). Therefore, the Court considers whether 8 U.S.C. 1252(g) bars jurisdiction over this case.

Section 1252(g) bars district courts from hearing claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate

cases, or execute removal orders." But the Supreme Court has interpreted this provision narrowly, limiting it to "only three discrete actions": the "'decision or action' to commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)).

As the Supreme Court found, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* (Scalia, J.); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*") (holding court had jurisdiction to review agency decision to rescind DACA, consistent with Section 1252(g), because it was not a decision to "commence proceedings," or to "'adjudicate' a case or 'execute' a removal order" and was rather a decision to "revoke[] a deferred action program with associated benefits." (quoting 8 U.S.C. § 1252(g))); *Jatta v. Clark*, Case No. 19-cv-2086, 2020 WL 7700226, at *7 (W.D. Wash. July 17, 2020) (Report and Recommendation) (Section 2255(g) "d[oes] not strip the district court[s] of jurisdiction to enter injunctive relief," when "the 'gravamen' of the defendant's claim d[oes] not arise from the decision or action to commence [removal] proceedings." (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc))).

J.R. does not challenge the Government's discretionary decisions regarding the execution of his removal order. Nor does he challenge his removability. Instead, J.R. asserts claims under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 555(b), alleging that the Government is

TEMPORARY RESTRAINING ORDER - 6

failing to carry out its non-discretionary duty to deport him to the Philippines in accordance with 8 U.S.C. § 1231(b)(2)(A)(ii) and 8 U.S.C. § 1231(b)(2)(C).

The facts resemble those in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *10 (D. Mass. Apr. 18, 2025) in which the plaintiffs challenged the Government's "authority to effectively depart from the removal orders by designating new countries for removal outside of the immigration proceedings and, in doing so, circumvent [the plaintiffs'] due-process rights and the carefully crafted scheme that Congress has set forth."[2] The *D.V.D.* court held that Section 1252(g) shields only discretionary decisions concerning the deportation process, and the Government has a non-discretionary duty to withhold removal under the Convention Against Torture (CAT), if the applicant demonstrates eligibility, therefore, the court "has jurisdiction to hear" the question of what Constitutional and statutory right individuals have to seek withholding of removal from a third country. *Id.* at *11.

This Court reaches the same conclusion. J.R.'s claim that the Government has violated the APA by failing to carry out non-discretionary statutory duties and provide due process to seek withholding of removal under CAT is the gravamen of his suit. Therefore, Section 1252(g) does not strip this Court of jurisdiction to issue injunctive relief in this case.

---

[2] The United States Supreme Court stayed the universal injunction granted in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *10 (D. Mass. Apr. 18, 2025), pending appeal on the merits. *Dep't of Homeland Sec. v. D.V.D.*, No. 24A1153, 2025 WL 1732103 (U.S. June 23, 2025). This case does not involve universal injunctive relief, instead it is limited to the sole plaintiff, J.R.

**3.3  The *Winter* factors support a TRO.**

J.R. raises serious questions going to the merits of his APA claim that the Government has failed to carry out a non-discretionary duty. Under his APA and Mandamus claims, J.R. argues the Government must remove him to the Philippines as specified in his removal order under 8 U.S.C. § 1231(b)(2)(A)(ii), and that none of the statutory exceptions under § 1231(b)(2)(C) apply here.

Indeed, J.R. alleges he is a native of the Philippines and the government of the Philippines has agreed to accept him. As a result, there are no grounds upon which the Government can designate an alternative country. In addition, as the Government has not notified J.R. what country to which it intends to deport him, he has been denied an opportunity to seek withholding under CAT. Thus, the Court has serious questions about the merits of his due process claim that the Government violated his rights by attempting third-country removals without providing him notice and an opportunity to seek CAT protection.

The second *Winter* factor—irreparable harm—tips sharply in favor of a TRO. The Government has twice attempted to deport J.R. to countries outside the Philippines—Libya and Cuba. J.R. argues that he is likely to face irreparable harm in either of these countries given the human rights violations committed against noncitizen detainees in Cuba and Guantanamo Bay, and because of the unstable conditions in Libya. Moreover, J.R. has no connection to either of these countries.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in J.R.'s favor. A TRO would impose little to no prejudice on the Government, which is free at any time to execute the removal order by deporting J.R. to the Philippines. On the other hand, absent a TRO, J.R. will face life-changing and irreparable harm.

**3.4   An ex parte TRO is appropriate and necessary.**

Courts will rarely grant TROs ex parte. Fed. R. Civ. P. 65(b); LCR 65(b). But "if the movant meets the requirements of Fed. R. Civ. P. 65(b), the court may grant the motion without awaiting a response." LCR 65(b). J.R. has met those requirements by demonstrating through specific facts in the supporting declarations that immediate and irreparable injury would result before full briefing could occur.

The record shows the Government has twice attempted to remove J.R. to third countries with very short notice. On May 7, 2025, ICE removed J.R. from his cell at 2:00 a.m.—just two days after telling him he would be sent to Libya. Dkt. No. 3-1 ¶ 8; Dkt. No. 14 at 6. On June 26, 2025, hours after Philippine consular officials confirmed with ICE that J.R. would be removed to the Philippines, ICE transferred him for removal to Cuba, picking him up at 11:00 p.m. without telling him where he was going. Dkt. No. 15-2 ¶¶ 6-8.

When counsel asked the Government to confirm that J.R. would be removed only to the Philippines, Acting Assistant Field Office Director Burns said she "could

not confirm to what country and when [J.R.] might be removed and was awaiting further instructions from 'Headquarters.'" Dkt. No. 15-4 ¶ 4.

Thus, given the Government's pattern of sudden removal attempts with minimal notice and the serious questions raised by J.R., the Court finds ex parte relief warranted without waiting for the Government's opposition at this time. A more thorough examination of the issues will occur at the preliminary injunction stage.

### 4. CONCLUSION

Accordingly, the Court ORDERS that the Government and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are immediately enjoined from removing or deporting J.R. to Cuba (including Guantanamo Bay), Libya, or any third country in the world absent prior approval from this Court. Nothing in this order may be construed as preventing the Government from executing J.R.'s removal order and removing him to the Philippines.

Unless extended by the Court, this Temporary Restraining Order expires 14 days from entry. No security bond is required under Federal Rule of Civil Procedure 65(c) because the Government face no realistic likelihood of harm from enjoining its conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

To the extent J.R. intends to move for a preliminary injunction, the parties are ordered to meet and confer and file a joint status report by July 7, 2025, (1) proposing a preliminary injunction briefing schedule, (2) indicating whether they

believe a hearing is necessary, and if so, (3) indicating whether they plan to present evidence at the hearing.

Dated this 30th day of June, 2025.

*[signature]*

Jamal N. Whitehead
United States District Judge

TEMPORARY RESTRAINING ORDER - 11